UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>        Plaintiff,        )<br>                              )<br>v.                              )<br>                              )<br>DUSTY L. GUY III         )<br>        Defendant.        ) | CASE NUMBER:   1:23-CR-33 |

## MEMORNADUM IN SUPPORT OF SENTENCING VARIANCE

Dusty Guy III, through counsel, hereby respectfully submits this Memorandum to assist this Honorable Court in the exercise of its discretion for sentencing purposes to ensure – pursuant to 18 U.S.C. section 3553(a) factors – that the sentence imposed is "sufficient but not greater than necessary." For this reason, Mr. Guy respectfully requests that this Court grant a fifteen-point variance to reduce the total offense level to 8, resulting in a guideline imprisonment range of zero (0) to six (6) months within Zone A of the sentencing table. This would allow the Court to order a sentence that includes only a period of probation or supervised release.

**The Court should consider the following factors contained in 18 U.S.C. § 3553(a) and grant Mr. Guy a variance equivalent of fifteen (15) offense levels**

Mr. Guy respectfully requests that this Court consider the following factors which are contained in 18 U.S.C. section 3553(a):

### 1. Nature and Circumstances of the Offense

Mr. Guy pled guilty to Count 1 of the Indictment, engaging in the business of manufacturing and dealing firearms without a license, in violation of 18 U.S.C. §§922(a)(1)(A),

923(a), and 924(a)(1)(D) and 18 U.S.C. § 2, and Count 2 of the Indictment, making a false statement during the acquisition of a firearm, in violation of 18 U.S.C. § 924(a)(1)(A).

The Presentence Investigation Report (hereinafter "PSR") reveals that in the fall of 2022, AATF began an investigation into CJ Tactical Supply Store after receiving a tip that the owner was selling firearms out of the business as a convicted felon. PSR at 11. ATF agents utilized undercover operations at CJ Tactical, conducting controlled buys of both firearms and ammunition. PSR at 12. Mr. Guy was present for a number of the controlled buys; agents noted that Mr. Guy sold them ammunition and facilitated the sale and manufacture of firearms by "discussing their needs, communicating with Jason Stuart about what the agent wanted, and accepting payment for the purchase." *Id.*

Dusty Guy became the manager of CJ Tactical after meeting store owner Jason Stuart in an online group through Discord. *Id.* at 51. Mr. Guy's interest in working at CJ Tactical came from his desire to become a gunsmith. He had no prior business experience, however, and wanted to learn from Jason Stuart. Mr. Guy had no idea that Jason Stuart was a convicted felon and unable to purchase firearms on his own. PSR at 53. Mr. Guy's relationship with Jason Stuart became one where Mr. Guy trusted Jason Stuart, with Stuart speaking to Guy about giving him a ten-percent ownership stake in CJ Tactical. *Id.* at 52.

This Court is familiar with the facts of this case, having previously sentenced the primary participant, Jason Stuart, and another CJ Tactical employee, Hayden Sweet. Stuart was openly selling ammunition in his store front, without an FFL. Stuart went further, however, selling firearms, but he attempted to conceal his efforts by ordering firearms under his employee Dusty Guy's name, among others.

When it was time to pick up the firearms and sign the 4473 form, Stuart would direct Mr.

Guy to complete the transaction. Mr. Guy was aware that straw firearms purchases were illegal and had no intentions of breaking the law. He received no additional financial compensation or other benefit for obtaining firearms for Stuart and CJ Tactical. But when Mr. Guy confronted Stuart about it, Stuart assured Mr. Guy that because he was a representative of the business, he could lawfully indicate that the firearms were for him

Dusty Guy trusted Jason Stuart. He was passionate about firearms and hoped to be in the munitions industry long-term. For this reason, he believed Stuart's explanations and representations about the legality of CJ Tactical's business practices. Mr. Guy was aware that the 4473 forms were incorrect when they said he was the actual purchaser, and he knew the firearms were eventually being sold. But somehow Mr. Guy believed because the firearms were being sold privately, an FFL was not required. Mr. Guy is aware now, however, that his ignorance of or confusion regarding the law is no excuse for his actions.

Mr. Guy also indicated on each 4473 form that he was not a user of marijuana. Mr. Guy knew that when he did this, he was being dishonest. He simply did not understand the seriousness or criminal nature of that dishonesty.

## 2. History of the defendant

Dusty Guy, III was born on November 5, 1997, in Marion, Indiana. When Mr. Guy was approximately five years old, his parents divorced, with his mother maintained primary physical custody. PSR at 93. Mr. Guy maintained a relationship with his father, having regular visits throughout his childhood. Both of Mr. Guy's parents remarried, and his step parents Tonya Timmons and Stanley Denbo were active in his upbringing.

Growing up, when his family lived in Marion, Mr. Guy recalls living in lower middle-class areas plagued by crime, drug activity, and other violence. PSR at 95. But Mr. Guy did not fall into any pitfalls as a result of his surroundings, having no adjudications as a juvenile. PSR at 85.

Mr. Guy had a generally positive home life as a child, but does recall an instance of domestic violence at the hands of his mother's former partner Tim Reed, Mr. Guy recalls that when he was in the second grade, Reed dragged him across the carpet causing rug burn. Reed continued to throw the family dog across the room and punch a hole in the wall.

As a child Mr. Guy struggled with attention deficit hyperactivity disorder (ADHD), of which he was diagnosed at age five (5). Mr. Guy began taking medication regularly for his ADHD when he was diagnosed, but over time felt that the medication made him feel not like himself. Around the seventh grade Mr. Guy felt that the medication was making him feel "like a zombie" and discontinued taking prescription medication for ADHD. In spite of this, Mr. Guy was able to graduate high school, as noted in the PSR, in 2017. 107.

An issue that has presented as a concern during the pendency of this case is Mr. Guy's marijuana use. Mr. Guy has struggled with the use of marijuana and synthetic cannabinoids while on pretrial release. Mr. Guy reports that cannabis helps calm his mind and manage his ADHD symptoms. Unfortunately, due to Mr. Guy's continued use of marijuana and synthetic cannabinoids, Mr., Guy's pretrial release was revoked and a warrant was issued for his arrest on January 16, 2025. Mr. Guy remained in custody until February 12, 2025, wherein he was released to reside at Road to Recovery sober living home in Fort Wayne. Mr. Guy's short time in custody was sobering, to say the least. The experience showed him what the consequences of criminal activity truly look like and reinforced his desire to maintain a law-abiding future.

Mr. Guy's case manager at Road to Recovery reports there have been no issues with Mr. Guy since he became a resident and will provide a progress report for the Court's consideration.

### 3. Characteristics of the defendant

Mr. Guy's interest in firearms began at a young age when he would take hunting trips with his father and grandfather. He recalls going rabbit hunting every Thanksgiving, a tradition he always looked forward to. As he grew up, Mr. Guy's interest in firearms grew. He and his friends would meet up for activities like skeet shooting; Mr. Guy enjoyed the fine details of caring for firearms. He recalls how focusing on activities like cleaning a firearm would calm his ADHD and put his mind at ease.

As a convicted felon Mr. Guy will no longer be able to use or possess firearms. This has been a tough pill for him to swallow. And while he is still working towards finding his passion, his aspiration continues to be to own his own business. Until that time, Mr. Guy has been working at Ashley Furniture Warehouse in Fort Wayne, where he assembles furniture and helps schedule delivery routes.

Speaking to Mr. Guy's friends, it is clear that Mr. Guy is a caring friend who is always there when you need him. Xian Squire, Dillon Cosper, and Dakota Brown have known Mr. Guy for over ten (10) years, having met Mr. Guy through Xbox Live online gaming. They have developed a closely knit friend group even though they don't see each other every day. Xian, Dilon, and Dakota characterize Mr. Guy as someone who cares about his friends and what's going on in their lives. He can always be counted on to offer a listening ear or remember important life events. Xian, Dilon, and Dakota value Mr. Guy's friendship enormously and each independently stated they consider Mr., Guy an extended family member.

Mr. Guy has an exceptionally limited criminal history, with the PSR noting that Mr. Guy has

4

one conviction for Reckless Driving out of Huntington County from 2017. At the time Mr. Guy was nineteen (19) years old. PSR at 86. This indicates that Mr. Guy is a law-abiding citizen with a low likelihood of recidivating.

### 4. The need for the sentence imposed.

Mr. Dusty Guy III respectfully requests that this Court grant a sentencing variance based upon the above stated considerations. By granting this variance, the Court may impose a sentence that would allow the Defendant to be considered for placement on probation; such a sentence would still provide appropriate punishment, protect the public, promote respect for the law, afford deterrence and promote rehabilitation as set forth in 18 U.S.C. section 3553(a)(2).

Dusty Guy, in committing these offenses, was not someone who went out looking to commit a crime. He certainly was not attempting to skirt the serious laws surrounding firearms manufacture and sale. For this reason, the Defense respectfully submits that there is limited need – from the perspective of specific deterrence – for a sentence in the Bureau of Prisons. This experience alone has taught Mr. Guy the importance of independently verifying information before accepting the representations of others, and the importance of truthfully representing himself.

The Court has the authority to consider factors not specifically set forth in 18 U.S.C. section 3553(a)(1). *Rita v. U.S.*, 127 S.Ct. 2456 (2007). "It is fair to assume that the Guidelines, insofar as practicable, reflect a rough approximation of sentences that might achieve section 3553(a)'s objectives." *Id.* at 2465. A sentencing judge is permitted to consider that the Guidelines sentence is not appropriate "because the Guidelines sentence itself fails properly to reflect section 3553(a) considerations". *Id.* at 2465.

It is recognized "that custodial sentences are qualitatively more severe than probationary

5

sentences of equivalent terms. Offenders on probation are nonetheless subject to several standard conditions that substantially restrict their liberty." *See United States v. Knights,* 534 U.S. 112, 119, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001) ("Inherent in the very nature of probation is that probationers 'do not enjoy the absolute liberty to which every citizen is entitled'" (*quoting Griffin v. Wisconsin,* 483 U.S. 868, 874, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987) (*internal quotation marks omitted*)).

Probationers may not leave the judicial district, move, or change jobs without notifying – and in some cases receiving permission from – their probation officer or the court. They must report regularly to their probation officer, permit unannounced visits to their homes, refrain from associating with any person convicted of a felony, and refrain from excessive drinking. USSG § 5B1.3. Most probationers are additionally subject to individual "special conditions" imposed by the Court." *Gall v. United States,* 552 U.S. 38, 48, 128 S. Ct. 586, 595–96, 169 L. Ed. 2d 445 (2007). One of the purposes of sentencing is rehabilitation, which may be used to justify a below-guidelines sentence. *See, e.g. Gall v. United States,* 552 U.S. 38, 43-44(2007); *United States v. Johnson,* 2007 WL 3357564, (E.D. Wis. 2007).

Allowing Mr. Guy to serve his sentence through a period of probation would enable him to remain in drug treatment and remain gainfully employed, It would also provide structure and supervision that would promote rehabilitation. And further, such a sentence would properly comport with the goals and considerations provided in 18 U.S.C. § 3553(a).

                                          Respectfully submitted,
                                          */s/ Emily A. Kutsenok*
                                          Emily A. Kutsenok, #37194-02
                                          Lincoln Tower, 5th Floor
                                          116 East Berry Street
                                          Fort Wayne, Indiana 46802

Phone: (260) 428-2218
Fax: (260) 426-3360

### CERTIFICATE OF SERVICE

I hereby certify that, on March 24, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notifications of such filing to all parties of record.

/s/ *Emily A. Kutsenok*
Emily A. Kutsenok